

Signed/Docketed
December 4, 2008

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08-15852-MER |
| THOMAS G. ARRIGO ) | |
| JOAN B. ARRIGO ) | Chapter 13 |
| ) | |
| Debtors. ) | |

## ORDER

THIS MATTER comes before the Court on confirmation of the Second Amended Chapter 13 Plan (the "Second Amended Plan") filed by Thomas G. Arrigo and Joan B. Arrigo (the "Arrigos" or the "Debtors"), and the objection thereto filed by the Standing Chapter 13 Trustee (the "Trustee"). The Court has considered the evidence and legal arguments presented by the parties, and hereby makes the following findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), as it involves the confirmation of a plan.

## BACKGROUND FACTS

The Arrigos filed their Chapter 13 bankruptcy petition on April 30, 2008. They have since filed three Chapter 13 plans: the original plan on April 30, 2008 ("the Original Plan"), an amended plan on July 3, 2008 (the "First Amended Plan"), and the Second Amended Plan dated August 28, 2008 (the "Second Amended Plan).

The Arrigos also filed on the petition date a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (the "Original Form 22C"), as well as their Schedules I and J (the "Original Schedules"). An amended Form 22C (the "Amended Form 22C"), as well as amended Schedules I and J (the "Amended Schedules"), were filed on July 3, 2008. A brief, numerical summary of the amendments to the plan, Form 22C and schedules is attached as Attachment 1 to this Order.

On June 12, 2008, the Trustee filed an objection to the Debtor's Original Plan. The Trustee's objection included the following points: (1) the Debtors' Original Form 22C numbers on lines 27A and 29 were incorrect and (2) the Debtors' plan was not proposed in good faith, as

evidenced by (a) Mr. Arrigo's income on Schedule I being understated, (b) Mr. Arrigo's excessive tax withholding of 31%, and (c) questionable expenditures on Schedule J.

The Trustee's objections with respect to income and expenses were resolved through subsequent amendments filed by the Debtors and by the parties' Stipulated List of Uncontested Background Facts (the "Stipulated Facts").[1]  For the purpose of the confirmation hearing, the parties stipulate the amount of the Debtors' monthly disposable income is $714.63 per month, which amount is listed on the Debtors' Amended Form 22C (line 59).  *Stipulated Facts,* ¶ 4.[2]  The Trustee agrees Amended Schedule I resolves the Trustee's objection regarding Mr. Arrigo's gross income.  *Stipulated Facts*, ¶ 5.  The Trustee also stipulates to the reasonableness of the expenses set forth in Amended Schedule J.  *Stipulated Facts*, ¶ 6.[3]

At the confirmation hearing on September 8, 2008, the parties agreed the remaining issues before the Court relate to the interpretation of "projected disposable income" as that term is used in 11 U.S.C. § 1325(b),[4] and whether the Second Amended Plan has been proposed in good faith under § 1325(a)(3).  It is also important to note what is not at issue in this case.  There is no dispute as to the duration of the Debtors' plan (60 months), nor as to the accuracy of any line items (income or expenses) on either Amended Form 22C or Amended Schedules I and J.

## DISCUSSION

"The burden of proof to obtain confirmation is on the proponent of the plan."  *In re Lincoln*, 30 B.R. 905, 909 (Bankr. D. Colo. 1983); *see also In re Anderson*, 173 B.R. 226, 229 (Bankr. D. Colo. 1993).  The controlling section of the Bankruptcy Code is § 1325.

Section 1325(b)(1)(B) provides a plan subject to an objection by the Trustee must provide all the debtor's projected disposable income to be received during the plan period will go towards the payment of unsecured creditors.  11 U.S.C. § 1325(b)(1)(B).[5]  In addition, § 1325(a)(3) of the

---

[1]  The Court hereby incorporates the Stipulated Facts into this Order, as modified and clarified below.

[2]  At the hearing, counsel indicated the Trustee did not agree every line item on the Amended Form 22C is accurate, but, for the purposes of the confirmation hearing, was willing to stipulate the bottom line item (line 59, monthly disposable income) is accurate.

[3]  At the beginning of the hearing, both counsel noted some disagreement as to the scope or meaning of ¶ 5 and ¶6 of the Stipulated Facts.  Trustee's counsel indicated he believed the Stipulation to be that Amended Schedules I and J are accurate.  While admitting the Debtors signed and filed the Amended Schedules, Debtors' counsel stated the amendments were filed to resolve the Trustee's objections, but he did not agree Amended Schedules I and J are the best evidence of the Debtors' ability to fund the Second Amended Plan.

[4]  Unless otherwise specified, all future statutory references in the text are to Title 11 of the United States Code.

[5]  Section 1325(b)(1) provides as follows:

Bankruptcy Code imposes a good faith requirement for confirmation. *See Pioneer Bank of Longmont v. Rasmussen (In re Rasmussen)*, 888 F.2d 703, 704 (10th Cir. 1989).

The Trustee's objection raises issues involving both disposable income under Form 22C and § 1325(b)(1)(B), as well as the good faith requirement of § 1325(a)(3). The two criteria are intertwined in this case, because the Trustee has questioned whether the Debtors have made a true effort to pay all their projected disposable income into the Second Amended Plan.

**A.   Projected Disposable Income.**

The Court must first calculate "projected disposable income" required for confirmation of the Second Amended Plan pursuant to § 1325(b)(1). There are two general approaches to this task – the "plain meaning" or "mechanical" interpretation (using only the calculation on Form 22C) and the "starting point" or "forward-looking" interpretation (starting with the Form 22C, but taking into consideration other factors such as Schedules I and J). The Trustee supports the forward-looking interpretation and the Debtors support the plain meaning interpretation. However, the Debtors assert the Court can confirm the Debtors' Second Amended Plan under either interpretation.

   *1.   Plain Meaning or Mechanical Interpretation.*

Under the plain meaning or mechanical interpretation, projected disposable income is nothing more than "Monthly Disposable Income Under § 1325(b)(2)" as calculated on the Form 22C (line 59), multiplied out over the life of the plan. The term "projected" is simply a modifier of the phrase "disposable income." The Debtors favor this interpretation, relying on *Maney v. Kagenveama* (*In re Kagenveama*), 541 F.3d 868 (9th Cir. 2008), *In re Petro*, 381 B.R. 233 (Bankr. M.D. Tenn. 2008), and *In re Waters*, 384 B.R. 432 (Bankr. N.D. W.Vir. 2008). Under these cases, the Debtors argue the Court must use only the formulaic process driven by the Form 22C in determining projected disposable income. Using this interpretation, Schedules I and J are not relevant to the determination of projected disposable income.

Since the hearing on this matter, the *In re Petro* case was reversed and remanded by the Bankruptcy Appellate Panel for the Sixth Circuit Court of Appeals. *See In re Petro*, 395 B.R. 369 (6th Cir. BAP 2008). However, a number of other Courts have followed the plain meaning approach, including *In re Cox*, 393 B.R. 681 (Bankr. W. D. Mo. 2008), *In re Hedge*, 394 B.R. 463 (Bankr. S.D. Ind. 2008), *In re Neclerio*, 393 B.R. 784 (Bankr. S.D. Fla. 2008), *In re Austin*, 372 B.R. 668 (Bankr. D. Vt. 2007); *In re Kolb*, 366 B.R. 802 (Bankr. S.D. Ohio 2007); *In re Tranmer*,

---

If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan - (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

355 B.R. 234 (Bankr. D. Mont. 2006); *In re Alexander*, 344 B.R. 742 (Bankr.E.D. N.C. 2006); and *In re Barr*, 341 B.R. 181 (Bankr.M.D. N.C. 2006).

Under the plain meaning view, the Debtors contend they are only required to commit their "Monthly Disposable Income" calculated as $714.63 per month on the Form 22C for 60 months ($714.63 x 60 = $42,877.80). *See* Amended Form 22C, line 59. The Debtors' Second Amended Plan proposes two (2) payments of $137.56, followed by two (2) payments of $803.00, followed by fifty-six (56) payments of $882.56. This results in a total payment of $43,174.00 to Class Four unsecured creditors. *See* Second Amended Plan, pp. 1 and 2.

   2.   *Starting Point or Forward-Looking Interpretation.*

Under the "forward-looking" interpretation, the calculation on Form 22C is just the starting point for the analysis of projected disposable income. Courts adopting this interpretation view the meaning of projected disposable income as a "forward-looking" concept. The Court may still consider Schedules I and J, as well as changes in a debtor's post-petition income and expenses. At the time of the hearing, the Trustee relied upon the decision of the Bankruptcy Appellate Panel for the Tenth Circuit Court of Appeals (the "10th BAP") in *In re Lanning*, 380 B.R. 17 (10th Cir. BAP 2007) which was then on appeal to the Tenth Circuit Court of Appeals (appeal docketed, No. 08-3009 (10th Cir. January 14, 2008)).[6] The Trustee also relies on pre-BAPCPA case law such as *Flygare v. Boulden* (*In re Flygare*), 709 F.2d 1344 (10th Cir. 1983), *Rasmussen*, 888 F.2d 703 (10th Cir. 1989) and *Mason v. Young* (*In re Young*), 237 F.3d 1168 (10th Cir. 2001).

Under the forward-looking view, the Trustee argues the Debtors should be required to commit monthly payments of $1,718.15, as reflected by Debtors' Amended Schedules I and J. Over 60 months, these payments would total $103,089.00. Using the Trustee's figures, the Debtors would repay nearly all their unsecured debt over the 60-month life of the plan.[7]

   3.   *The Tenth Circuit Addresses Projected Disposable Income.*

On November 13, 2008, the Tenth Circuit adopted the forward-looking interpretation in *In re Lanning*, 545 F.3d 1269 (10th Cir. 2008). As a result, *In re Lanning* now controls this Court's decision in the instant case.

---

[6] Other courts following the forward-looking approach include *In re Frederickson*, 545 F.3d 652, (8th Cir. 2008), *In re Thomas*, 395 B.R. 914 (6th Cir. BAP 2008), *In re Petro*, 395 B.R. 369 (6th Cir. BAP 2008), *In re DeThample*, 390 B.R. 716 (Bankr. D. Kan. 2008), *In re Gonzalez*, 388 B.R. 292 (Bankr. S.D. Tex. 2008), *In re Liverman*, 383 B.R. 604 (Bankr. D. N.J. 2008), *In re Minahan*, 394 B.R. 116 (Bankr. W.D. Va. 2008), *In re Hilton*, 395 B.R. 433 (Bankr. E.D. Wis. 2008), *Kibbe v. Sumski* (*In re Kibbe*), 361 B.R. 302 (1st Cir. BAP 2007); *In re Watson*, 366 B.R. 523 (Bankr. D. Md. 2007); *In re Grady*, 343 B.R. 747 (Bankr. N.D. Ga. 2006); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006), and *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006).

[7] The Debtors' Schedule F lists $88,031.22 in general unsecured debt (Docket #1). The Debtors were also successful in voiding two liens in the amounts of $19,944.01 and $1,418.27 (Docket #34 and #35). Including these now unsecured liens, the Debtors have $109,393.50 in general unsecured debt.

The Tenth Circuit recognized "each interpretation of the statutory language is not without problems." *Lanning*, 545 F.3d at 1278. However, the Court found the forward-looking interpretation to be more compatible with §1325(b)(1)(B) and Form 22C. As noted by the Court:

> [U]nder the forward-looking approach, "projected" links "disposable income" and "to be received in the applicable commitment period," requiring the debtor to commit all "disposable income" (as defined by § 1325(b)(2) and its reliance on the definition of "current monthly income") that is "projected . . . to be received in the applicable commitment period." Under this reading, the debtor's actual circumstances at the time of plan confirmation are taken into account in order to "project" (in other words, to "forecast") how much income the debtor will actually receive during the commitment period, which, after deducting permitted expenses, then "will be applied to make payments" to the unsecured creditors, as the statute requires.

*Lanning*, 545 F.3d at 1279.

The Court limited the holding as follows:

> [A]s to the income side of the § 1325(b)(1)(B) inquiry, the starting point for calculating a Chapter 13 debtor's "projected disposable income" is presumed to be the debtor's "current monthly income," as defined in 11 U.S.C. § 101(10A)(A)(i), subject to a showing of a substantial change in circumstances.

*Lanning*, 545 F.3d at 1282. Whether "Ms. Lanning's Form B22C expenses were the relevant expenses for purposes of arriving at her 'projected disposable income'" was not at issue in the appeal, and would not be addressed "even though those expenses were greater than her actual, Schedule J expenses." *Lanning*, 545 F.3d at 1274 n4.[8]

Under *Lanning*, therefore, this Court must determine if a substantial change in circumstances exists to warrant consideration of any figures outside those on the Debtors' Form 22C.[9] If so, the Court must start with the Form 22C figure for monthly disposable income (line 59), then compare the Debtors' actual circumstances and Schedules I and J at the time of plan confirmation. However, absent a substantial change in circumstances, the Debtors' Second Amended Plan may be confirmed, as the "debtor's 'projected disposable income' is presumed to be

---

[8] The Court also noted it was not presented with the question of whether there was a substantial change in circumstances for the debtor, Ms. Lanning, nor with the relevant duration of the commitment period. *Lanning*, at 545 F.3d at 1274 n.4.

[9] The parties in this case did not raise the issue of whether a deviation from Form 22C disposable income (line 59) may be requested by a non-debtor, *i.e.* the trustee or creditor. The Court notes this issue was addressed in *In re Williams*, 394 B.R. 550, 561 (Bankr. D. Colo. 2008) ("This Court does not find support in either § 707(b)(2)(B) or § 1325(b)(3) for the proposition that a trustee or a creditor may invoke the special circumstances exception."). The issue was not before the Court in *Lanning* as it was the Debtor requesting a deviation from the Form 22C.

the debtor's 'current monthly income." *Lanning,* 545 F.3d at 1282. A discussion of certain background facts and testimony at trial is necessary for the Court's determination.

The Arrigos live in a modest home in Broomfield, Colorado valued on Amended Schedule A at $179,000.00, they own older model vehicles[10] and have only $13,204.34 in retirement plans and stock. Most of their unsecured debt is credit card debt. *See* Amended Schedules A, B, F and G. As of the petition date, Mr. Arrigo had been employed as a facilities manager for 4 years and 7 months and Mrs. Arrigo had been employed as a cook/cashier for a school district for 6 months. *See* Amended Schedules I and J.

On the income side of the equation, the Debtors' Amended Schedule I disclosed combined average gross monthly income of $7,076.66 (lines 1 and 12) and net monthly income of $5,569.29 (line 16). Amended Schedule I disclosed combined average gross monthly income of $8,067.60 (lines 1 and 12) and net monthly income of $7,328.80 (net income, line 16). In comparison, the Original and Amended Form 22C disclosed current gross monthly income of $8,126.64 (line 20). The gross income amounts on Debtor's Amended Schedule I and Amended Form 22C thus differ by only $59.04.

On the expense side of the equation, the Debtors' Amended Schedule J disclosed average monthly expenses of $5,392.10 (line 18), which was amended to $5,610.65 (line 18). In comparison, the Original Form 22C disclosed all deductions (*i.e.*, expenses) as $7,989.17 (line 52), which was amended to $7,412.01 (line 52). The expenses and deductions on the Amended Form 22C are $1,801.36 greater than those on Amended Schedule J.[11]

Mr. Arrigo explained he received pay for overtime work for the time period of February 2008 through May 2008. This assertion is supported by the pay statements in Debtors' Exhibit 1 showing 10 hours of overtime for each of the pay periods ending February 9, 2008, February 16, 2008, February 23, 2008, March 15, 2008, March 22, 2008, and March 29, 2008.[12] Mr. Arrigo testified the overtime was temporary. He has not received overtime since June 2008 and does not expect to receive any in the future. Mr. Arrigo asserted he could not fund a Chapter 13 plan at the rate of over $1,700.00 per month because of the lost overtime.

Mrs. Arrigo is sixty years old and prior to working as a cook and cashier at an elementary school, she was retired. She presently works during the school year, four hours a day, and is not paid during summer break (June, July and August), teacher in-service days and other days school is

---

[10] The Arrigos own a 1979 Ford F-100 and a 1999 Honda CR-V, and lease a 2007 Jeep Liberty.

[11] Comparing the Amended Form 22C expenses and deductions to Amended Schedule J expenses is a bit of an "apples to oranges" comparison as the expenses/deductions on the Amended Form 22C include payroll deductions which are on Amended Schedule I, not Amended Schedule J. The Debtors' total payroll deductions are $738.80 (Amended Schedule I, line 5).

[12] Due to the timing of the bankruptcy filing on April 30, 2008, three months of his overtime was included in the six month calculation on the Form 22C.

not in session. Because she recently switched from a middle school to an elementary school, she expects to work fewer days as the elementary school has more in-service days than the middle school. Due to the timing of the filing, Mrs. Arrigo's income on Amended Form 22C reflected all working months at the middle school and does not take into account the summer months in which she does not receive income.

This evidence indicates the only changes in circumstances from the petition date to the confirmation date are Mr. Arrigo's loss of overtime and Mrs. Arrigo's slight reduction in annual income. These changes do not strike the Court as "substantial" under the circumstances in this case. Even if they did constitute substantial changes, they would weigh in favor of the Debtors' proposed Second Amended Plan. The Debtors' testimony supports their income as reported on Amended Schedule I has decreased and they are unable to make the monthly plan payments of $1,718.15 proposed by the Trustee. *See* Amended Schedule J, line 20c.

The 10th BAP opinion in *Lanning* noted "[d]eviation from the Form B22C determination of disposable income will be the exception rather than the rule." *Lanning*, 545 F.3d at 1274 (*quoting In re Lanning*, 380 B.R. 17, 25 (10th Cir. BAP 2007)). The Court agrees and finds the "exception" does not apply under the facts of this case.[13]

**B.     Good Faith**.

The Trustee also objects to the Second Amended Plan as not being proposed in good faith. The Trustee argues the good faith analysis in the pre-BAPCPA case of *Flygare v. Boulden* (*In re Flygare*), 709 F.2d 1344 (10th Cir. 1983) is still relevant to post-BAPCPA cases and to the Court's consideration of the Second Amended Plan.[14] The Trustee focuses on the Debtors' ability to pay under Amended Schedules I and J (the first and second *Flygare* factors) and the inaccuracy in the Original Schedules and Form 22C (the fourth *Flygare* factor), as grounds for finding the Second Amended Plan has not been proposed in good faith. The Court agrees with the Trustee to the extent it believes the *Flygare* factors and analysis are still relevant in post-BAPCPA cases.

---

[13] As the expenses of the Arrigos were not challenged in this case, the Court need not address the issue of whether the *Lanning* holding extends to an analysis of the expense side of the equation.

[14] The *Flygare* factors are: (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.

The Trustee points out the Debtors originally understated their income on Schedule I. The combined average monthly *net* income on Original Schedule I was $5,569.29 and was amended to $7,328.80 (Amended Schedule I, line 16). The Original and Amended Form 22C included total *gross* income of $8,126.64 (Form 22C, line 11). Full disclosure and accurate information in the statement of financial affairs, schedules and Form 22C constitutes a critical part of debtors' responsibilities. *In re DeVoll*, 266 B.R. 81, 98 (Bankr. N.D. Tex. 2001) ("The accuracy and completeness of information contained in a debtor's schedules and statement of financial affairs is essential to the successful administration of the case"). However, while the change from Schedule I to Amended Schedule I is a significant amount, there was no showing the Debtors intended to hide their income or mislead the Court.

Mr. Arrigo's loss of overtime and Mrs. Arrigo's decline in income rebuts the Trustee's allegation of bad faith. The Court declines to find "lack of good faith" where the Debtors are following the requirements of the law, specifically § 1325, and proposing a plan conforming with the information contained on their Amended Form 22C. Based on the above discussion of the relevant case law and evidence presented at trial, the Court finds the Debtors' Second Amended Plan has been proposed in good faith. Accordingly,

IT IS ORDERED the Trustee's Objection to confirmation of the Debtors' Second Amended Plan dated August 28, 2008, is DENIED.

IT IS FURTHER ORDERED confirmation of the Debtor's Second Amended Plan dated August 28, 2008, is GRANTED and a separate Order confirming the Second Amended Plan shall enter.

DATED: December 4, 2008

BY THE COURT:

Michael E. Romero
U.S. Bankruptcy Judge

**ATTACHMENT 1**

**SCHEDULES AND FORM 22C:**

|  | **Original I & J (4/30/08, Doc. #1)** | **Amended I & J (7/30/08, Doc. #16)** | **Original Form B22C (4/30/08, Doc. #1)** | **Amended Form B22C (7/30/08, Doc. #15)** |
|---|---|---|---|---|
| **Income** | $5,569.29 (I, line 16) | $7,328.80 (I, line 16) | $8,126.64 (line 20) | $8,126.64 (line 20) |
| **Expenses** | $5,392.10 (J, line 18) | $5,610.65 (J, line 18) | $7,989.17 (line 52) | $7,412.01 (line 52) |
| **Monthly disposable income** | $177.19 (J, line 20.c.) | $1,718.15 (J, line 20.c.) | $137.47 (line 59) | $714.63 (line 59) |

**CHAPTER 13 PLANS:**

|  | **Original Plan (4/30/08, Doc. #2)** | **Amended Plan (7/03/08, Doc. #17)** | **Second Amended Plan (8/28/08, Doc. #40)** |
|---|---|---|---|
| **Monthly payments** | $138 per month for 60 months | 2 payments of $137.56, followed by 56 payments of $802.56, followed by 2 payments of $1,467.56 | 2 payments of $137.56, followed by 2 payments of $803.00, followed by 56 payments of $882.56 |
| **Payment to Class Four** | $4,428 | $40,338 | $43,174 |

Page 9 of 9